Nos. 25-13991(L), 25-13994, 25-14001, 25-14002, 25-14003,
25-14004, 25-14005, 25-14006, 25-14007, 25-14008, 25-14009

## IN THE UNITED STATES COURT OF
## APPEALS FOR THE ELEVENTH CIRCUIT

COREY ADAMS, BRYAN ARNOLD, KEITH BRADLEY, SABRINA HILL,
GARY KIRK, THANH LE, TOM MOELLER, IESHA PRATHER, MARIA
SIMMONS, SHEKENA TALLEY, AND STEPHEN WILSON
*Plaintiff-Appellants-Cross Appellees,*
*v.*
WAL-MART ASSOCIATES, INC.,
*Defendant-Appellee-Cross Appellant.*

On Appeal from the United States District Court for
the Northern District of Georgia
No. 2:23-cv-00015-SCJ

## BRIEF OF AMICUS CURIAE THE CHAMBER OF COMMERCE
## OF THE UNITED STATES IN SUPPORT OF DEFENDANT-
## APPELLEE-CROSS APPELLANT

JESSICA A. LEE
SHANE D. O'CONNOR
KIRKLAND & ELLIS LLP
4550 Travis St.
Dallas, TX 75205

JENNIFER B. DICKEY
KEVIN R. PALMER
U.S. CHAMBER LITIGATION CENTER
1615 H Street, N.W.
Washington, DC 20062

KASDIN M. MITCHELL
  *Counsel of Record*
CONSTANCE L. MCKINNON
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (214) 972-1770
Facsimile: (214) 972-1771
kasdin.mitchell@kirkland.com

*Counsel for Chamber of Commerce of the United States*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

The Chamber of Commerce of the United States of America is a non-profit, tax-exempt organization incorporated in the District of Columbia. The Chamber has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

In addition to the persons and entities listed in the Certificates of Interested Persons in briefs that were previously filed per 11th Cir. R. 26.1-2(b), the following listed persons and entities as described in 11th Cir. R. 26.1-2(a) have an interest in the outcome of this case:

Chamber of Commerce of the United States of America

Dickey, Jennifer B.

Lee, Jessica A.

McKinnon, Constance L.

Mitchell, Kasdin M.

O'Connor, Shane D.

Palmer, Kevin R.

Pursuant to Eleventh Circuit Rule 26.1-3(b), the undersigned counsel of record certifies that the Chamber is not aware of any publicly

traded company or corporation that has an interest in the outcome of

this case or appeal.

Date: January 29, 2026.
　　　　　　　　　　　　　　　*/s/ Kasdin M. Mitchell*
　　　　　　　　　　　　　　　Kasdin M. Mitchell

## TABLE OF CONTENTS

TABLE OF CITATIONS ..................................................... i

INTEREST OF *AMICUS CURIAE* ...................................... 5

STATEMENT OF THE ISSUE ......................................... 6

INTRODUCTION AND SUMMARY OF THE ARGUMENT ........... 6

ARGUMENT .................................................................. 9

    I.    The Text of the FLSA Does Not Require Court Approval for Voluntary Dismissals Under Rule 41. .......................... 9

    II.   The Court-Approval Rule Hamstrings the Ability of Employers to Resolve FLSA Claims Efficiently to the Detriment of Employees. ................................................ 14

    III.  Rule 41(A)(1)(A)(ii) Dismissal Is Mutually Beneficial for Employers and Employees. ........................................... 19

CONCLUSION ............................................................... 24

CERTIFICATE OF COMPLIANCE ................................... 25

CERTIFICATE OF SERVICE ......................................... 26

# TABLE OF CITATIONS

**Page(s)**

## Cases

*Absolute Activist Value Master Fund Ltd. v. Devine,*
   998 F.3d 1258 (11th Cir. 2021) ............................................................. 9

*Albers v. Tri-State Implement, Inc.,*
   2010 WL 960010 (D.S.D. Mar. 12, 2010) ........................................... 16

*Alcantara v. Duran Landscaping, Inc.,*
   2022 WL 2703610 (E.D. Pa. July 12, 2022) ........................... 17, 18, 21

*\*Anago Franchising, Inc. v. Shaz, LLC,*
   677 F.3d 1272 (11th Cir. 2012) ............................................................ 7

*Anderson v. Team Prior, Inc.,*
   2022 WL 16531690 (D. Me. 2022) ...................................................... 21

*Andrews v. Persley,*
   669 F. App'x 529 (11th Cir. 2016) ...................................................... 11

*Askew v. Inter-Cont'l Hotels Corp.,*
   620 F. Supp. 3d 635 (W.D. Ky. 2022) ........................................... 19, 21

*Bellitto v. Snipes,*
   935 F.3d 1192 (11th Cir. 2019) .......................................................... 12

*Boles v. G&S Elec. of Nw. Fla., LLC,*
   2023 WL 10554726 (N.D. Fla. Dec. 28, 2023) .................................... 22

*Cone v. W. Va. Pulp & Paper Co.,*
   330 U.S. 212 (1947) ............................................................................ 10

*Cooter & Gel v. Hartmarx Corp.,*
   496 U.S. 384 (1990) ............................................................................ 10

*Corbett v. Pub. Employees' Ret. Sys.,*
   716 F. Supp. 3d 1006 (D. Nev. 2024) ................................................. 21

i

*Dino v. Pennsylvania*,
  2013 WL 4041681 (M.D. Pa. Aug. 8, 2013) ................................. 17, 22

*Evans v. Centurion Managed Care of Ariz. LLC*,
  686 F. Supp. 3d 880 (D. Ariz. 2023) ........................................... 21, 22

*Gilstrap v. Sushinati LLC*,
  734 F. Supp. 3d 710 (S.D. Ohio 2024) ...................... 10, 13, 16, 17, 20

*Gonzalez v. Bustleton Servs.*,
  2010 WL 3282623 (E.D. Pa. Aug. 18, 2010) ................................... 16

*Heder v. City of Two Rivers*,
  255 F. Supp. 2d 947 (E.D. Wis. 2003) ............................................. 16

*Jackson v. Dovenmuehle Mortgage, Inc.*,
  2023 WL 4304871 (E.D. Wisc. 2023) ............................................... 21

*Jama v. ICE*,
  543 U.S. 335 (2005) ......................................................................... 13

*Jarquin v. Habanero Salvadorean & Mexican Grill LLC*,
  2025 WL 1397079 (M.D. Fla. May 14, 2025) ................................... 11

*Luna Perez v. Sturgis Pub. Schs.*,
  598 U.S. 142 (2023) ......................................................................... 12

*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) ....................................................... 12

*Martinez v. Back Bone Bullies Ltd.*,
  2022 WL 782782 (D. Colo. 2022) ..................................................... 21

*Mei Xing Yu v. Hasaki Rest., Inc.*,
  944 F.3d 395 (2d Cir. 2019) ...................................................... 10, 18

*Merritt v. Dillard*,
  120 F.3d 1181 (11th Cir. 1997) ......................................................... 6

*Picerni v. Bilingual Seit & Preschool Inc.*,
  925 F. Supp. 2d 368 (E.D.N.Y. 2013) ......................................... 18, 20

*Rapanos v. United States*,
547 U.S. 715 (2006) ..................................................................... 7

*Robbins v. Premier Senior Living, LLC*,
2024 WL 4308696 (N.D.N.Y. Apr. 12, 2024) ....................................... 22

*Smith v. Williams*,
67 F.4th 1139 (11th Cir. 2023) .......................................................... 10

*United States v. Bryant*,
996 F.3d 1243 (11th Cir. 2021) ....................................................... 7, 8

*Vasconcelo v. Mia. Auto Max, Inc.*,
981 F.3d 934 (11th Cir. 2020) .......................................................... 11

*Walker v. Marathon Petroleum Corp.*,
684 F. Supp. 3d 408 (W.D. Pa. 2023) ................................... 17, 21, 23

## Statutes and Rules

8 U.S.C. § 164 (1934) .................................................................. 13

29 U.S.C. § 216(b) ...................................................................... 16

31 U.S.C. § 232 (1934) ................................................................ 13

31 U.S.C. § 3730(b)(1) ................................................................ 14

Fed. R. Civ. Pro. 1 ...................................................................... 9, 23

*Fed. R. Civ. Pro. 41 ............................................................ 6, 7, 9, 10

## Other Authorities

Antonin Scalia & Bryan A. Garner, *Reading Law: The
Interpretation of Legal Texts* (2012) ...................................... 7

*The Fair Labor Standards Act: Is It Meeting the Needs of the
Twenty-First Century Workplace?*, Hr'g Before the
Subcomm. on Workforce Protections of the H. Comm. on
Educ. & the Workforce, 112th Cong. 2 (2011) .................................... 14

Hiscox, *The 2017 Hiscox Guide to Employee Lawsuits* (2017),
    https://shorturl.at/eYv6y.......................................................................... 15

Seyfarth & Shaw, *2024 Litigation Metrics & Trends* (2024),
    https://shorturl.at/f0JAd......................................................... 15, 16, 20

# INTEREST OF *AMICUS CURIAE*[1]

The Chamber of Commerce of the United States of America ("the Chamber") is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the Nation's business community.

Employers, including some of the Chamber's members, face thousands of cases every year filed under the Fair Labor Standards Act ("FLSA"). The district court's ruling below—which requires court approval of voluntary dismissals of FLSA cases—unnecessarily raises the costs and lowers the efficiency of litigating these cases for both employers

---

[1] No counsel for a party authored this brief in whole or in part, and no counsel or party contributed money intended to fund its preparation or submission. No person other than amici, their members, or their counsel contributed money intended to fund the preparation or submission of this brief. All parties consent to the filing of this brief.

and employees by preventing mutually resolved FLSA claims from being voluntarily dismissed under Federal Rule of Civil Procedure 41(a)(1)(A)(ii) without court approval. This ruling has no basis in the text of Rule 41 or the FLSA. Instead, it is based on judicially perceived policy goals. But courts undermine those same policy goals when applying this atextual rule to mutually-agreed-upon voluntary dismissals. The Chamber and its members thus have a strong interest in courts applying Rule 41(a)(1)(A)(ii) and the FLSA as written. Application of Rule 41's general provisions to FLSA settlements is faithful to the text and promotes just, speedy, and inexpensive resolution of disputes, consistent with the overarching mandate of the Federal Rules.

## STATEMENT OF THE ISSUE

Whether the district court erred in holding that parties cannot dismiss without prejudice mutually resolved FLSA claims through a Rule 41(a)(1)(A)(ii) stipulation.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

In construing a statute, courts "must begin, and often should end as well, with the language of the statute itself." *Merritt v. Dillard*, 120 F.3d 1181, 1185 (11th Cir. 1997). This approach is the "oldest and most

commonsensical interpretative principle," Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 15 (2012), and for good reason: It ensures that courts do not "substitut[e] the purpose of the statute for its text, freeing the Court to write a different statute that achieves the same purpose." *United States v. Bryant*, 996 F.3d 1243, 1257 (11th Cir. 2021), *superseded in part on other grounds by* U.S.S.G. § 1B1.13 (2023) (quoting *Rapanos v. United States*, 547 U.S. 715, 755 (2006)). But the district court's decision does just that. The district court displaced the text of Rule 41(a)(1)(A)(ii) to serve judicially perceived policy goals of the FLSA, to the detriment of both FLSA plaintiffs and defendants.[2] This Court should reverse.

**1.** Rule 41(a)(1)(A)(ii) expressly allows plaintiffs to voluntarily dismiss actions without a court order by filing a notice of dismissal or stipulation signed by all parties unless an "applicable federal statute" says otherwise. This dismissal is "self-executing." *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1278 (11th Cir. 2012).

---

[2] *See Adams*.Dkt.28 at 9-10; *Arnold*.Dkt.37 at 9-10; *Bradley*.Dkt.37 at 9-10; *Hill*.Dkt.25 at 9-10; *Kirk*.Dkt.30 at 9-10; *Le*.Dkt.30 at 9-10; *Moeller*.Dkt.36 at 9-10; *Prather*.Dkt.32 at 9-10; *Simmons*.Dkt.83 at 9-10; *Talley*.Dkt.34 at 9-10; *Wilson*.Dkt.37 at 9-10. As in the parties' brief, citations to "Dkt." are to the district court dockets in these cases.

Nothing in the text of the FLSA imposes a different requirement. The district court's only support for its court-approval rule—inapplicable precedent and its own policy view that court approval is needed to protect employees from unfair bargains—is untethered from the text of either Rule 41 or the FLSA. *See Simmons*, Dkt.83 at 5-6.

**2.** The district court's substitution of its policy preferences for those expressed in Rule 41 and the FLSA underscores why this Court has warned that the text of a statute must control: The district court's judicially-created rule increases the costs and burdens of litigation at the expense of both employers and employees. *See Bryant*, 996 F.3d at 1264. Indeed, in the name of protecting employees, the district court's rule requires them to participate in additional, unnecessary, and costly court proceedings, delaying (and potentially reducing or risking altogether) the parties' agreed-upon payout.

By contrast, Rule 41's yoke is light. It allows employers and employees to reach a mutually beneficial resolution of the employees' claims tailored to the reality of each plaintiff's case. And that is the very purpose of the Federal Rules of Civil Procedure: to help the "parties to

secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. Pro. 1.

The Chamber urges the Court to reverse the district court's decision and hold that stipulated dismissals under Rule 41(a)(1)(A)(ii) in FLSA cases do not require court approval, restoring an efficient, cost-effective, and party-driven path to resolving wage-and-hour disputes.

## ARGUMENT

### I. The Text of the FLSA Does Not Require Court Approval for Voluntary Dismissals Under Rule 41.

Nothing in the text of the FLSA exempts disputes under that statutory scheme from the self-executing nature of Rule 41 voluntary dismissals. The court's atextual support for its court-approval rule is not a substitute for plain text.

Rule 41(a)(1)(A)(ii) permits parties to "dismiss an action without a court order by filing … a stipulation of dismissal[,]" unless an "applicable federal statute" provides otherwise. Once a party files a stipulation of dismissal, "the action is no longer pending, and the district court is immediately deprived of jurisdiction over the merits of the case." *Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1265 (11th Cir.

2021) (quoting *Cooter & Gel v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) (cleaned up)).

Where there is "no language in [a statute] purporting to limit or condition a plaintiff's right to voluntarily dismiss an action without a court order under Rule 41(a)," then Rule 41(a) applies as usual. *Smith v. Williams*, 67 F.4th 1139, 1141 (11th Cir. 2023) (per curiam). Judicial respect for this mechanism reflects the fundamental principle that litigation belongs to the parties, and, absent an applicable federal statute expressly requiring court approval, parties are free to resolve their disputes without judicial intervention. *Cf. Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 217 (1947) ("Rule 41(a)(1) preserves th[e] unqualified right of the plaintiff to a dismissal without prejudice[.]").

Nothing in the text of the FLSA qualifies it as "an applicable federal statute" under Rule 41(a)(1)(A)(ii). Courts across the country, including within this Circuit, have explained in addressing this exact issue that "nowhere in the text of the current or prior versions of [the statute] is there a command that FLSA actions cannot be settled or otherwise dismissed without approval from a court." *Gilstrap v. Sushinati LLC*, 734 F. Supp. 3d 710, 717 (S.D. Ohio 2024) (ellipsis omitted) (citing *Mei Xing*

*Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 403 (2d Cir. 2019)); *see Simmons*, Dkt.83 at 8 (noting at least six cases allowing voluntary dismissal within the Eleventh Circuit).

Consistent with the statutory text, "no Eleventh Circuit decision has ever held [] that FLSA claims are exempt from Rule 41." *Jarquin v. Habanero Salvadorean & Mexican Grill LLC*, 2025 WL 1397079, at *1 (M.D. Fla. May 14, 2025). Instead, this Court has explained that the Federal Rules of Civil Procedure apply "in actions brought under the Fair Labor Standards Act no less than in any other case." *Vasconcelo v. Miami Auto Max, Inc.*, 981 F.3d 934, 942 (11th Cir. 2020).

The FLSA's silence should have been dispositive here. In *Andrews v. Persley*, this Court held exactly that in the context of the Prison Litigation Reform Act. 669 F. App'x 529, 530 (11th Cir. 2016) (per curiam). There, the district court converted the plaintiff's "self-executing notice of dismissal under Rule 41(a)" of his PLRA claim into a motion for approval "to further the purposes of the" PLRA's "three-strikes" dismissal provision, which is to "deter frivolous lawsuits." *Id.* at 529. This Court reversed the district court's holding that the PLRA was an "applicable federal statute" because "no language in the PLRA indicat[es] Congress'

intent to override" Rule 41 "in the prisoner litigation context." *Id.* at 530. In other words, the district court erred because it "opted to enforce the PLRA policy" over "the literal operation of Rule 41(a)(1)." *Id.*

So too here. The district court wrongly held that FLSA voluntary dismissals require court approval, relying inappositely on this Court's decision in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982), and on its own policy concern of protecting employees from one-sided resolutions. The joint appellants aptly explain why relying on *Lynn's* and its progeny was error. *See* Br. at 32-44. And likewise, policy considerations cannot "be used to contradict [the] text or to supplement it."[3] *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019) (quoting Scalia & Garner, *Reading Law* § 2, at 57); *see also Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 150 (2023) ("It is quite mistaken to assume, too, that any interpretation of a law that does more to advance a statute's putative goal must be the law. No law pursues its purposes at all costs." (cleaned up)).

---

[3] These policy considerations are also incorrect. As explained below, Rule 41 presumes that parties to civil litigation make informed, mutually beneficial decisions about their suits. The court-approval rule undercuts that presumption to the detriment of FLSA plaintiffs.

Courts must not "assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply." *Jama v. ICE*, 543 U.S. 335, 341 (2005). That is an especially erroneous method of interpretation here given that the text and context of the FLSA plainly compel the opposite rule. "[C]ontrasting subsection (c)'s grant of settlement authority to the federal courts (in suits where the Secretary is not involved), suggests that the statute does ***not*** displace those normal rules." *Gilstrap*, 734 F. Supp. 3d at 716.

Additionally, the drafters of Rule 41 were well aware that Congress knew how to expressly require court approval before settlement. The advisory committee's notes to Rule 41 at the time of its adoption in 1937 cited two statutes containing such express restrictions on settlement, the Immigration Act of 1917 and the False Claims Act, as examples of "applicable federal statute[s]" within the meaning of Rule 41(a)(1)(A). *See* Fed. R. Civ. P. 41 advisory committee's note to 1937 adoption (citing 8 U.S.C. § 164 (1934) [now 1329] ("[N]o suit or proceeding ... shall be settled, compromised, or discontinued without the consent of the court."); 31 U.S.C. § 232 (1934) (Suit "shall not be withdrawn or discontinued without the consent, in writing, of the judge of the court and the district

attorney.")).[4] Likewise, when Congress enacted the FLSA one year later in 1938, it was aware of Rule 41 and could have expressly required court approval had it wished to trigger the exception to the rule.

Nothing in the FLSA requires court approval for voluntary dismissal of FLSA claims under Rule 41. Accordingly, the district court should have left the parties' stipulated dismissals untouched.

## II. The Court-Approval Rule Hamstrings the Ability of Employers to Resolve FLSA Claims Efficiently to the Detriment of Employees.

The district court's contrary decision—based solely on atextual support—imposes a heavy burden on employers and employees alike by increasing the cost and burdens of FLSA litigation. In other words, the district court's rule purports to protect employees by prolonging litigation and delaying potential payments to those same employees.

Lawsuits filed under the FLSA have "skyrocketed" over the past three decades. There were "roughly 1,500 [cases per year] in the early 1990s." *The Fair Labor Standards Act: Is It Meeting the Needs of the*

---

[4] The current statutory provision, 31 U.S.C. § 3730(b)(1), uses slightly different language to the same effect: "The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting."

*Twenty-First Century Workplace?*, *Hearing Before the Subcomm. on Workforce Protections of the H. Comm. on Educ. & the Workforce*, 112th Cong. 2 (2011) (statement of Rep. Walberg) ("*21st Century Hearing*"). But between 2018 and 2024, that number jumped to an average of roughly 6,500 each year. *See* Seyfarth & Shaw, *2024 FLSA Litigation Metrics & Trends* (2024), https://shorturl.at/f0JAd (last visited Jan. 22, 2026). Two districts within this Circuit—the Southern and Middle Districts of Florida—rank third and fourth respectively in the number of FLSA suits filed in district courts. *Id.* And, in 2024, Florida saw the second highest number of FLSA suits by state (second only to New York). *Id.*

These cases are costly and their rapid increase in number "has imposed enormous—in some cases catastrophic—burdens on employers." *21st Century Hearing* at 22 (explaining increased costs of these actions). The average settlement amounts of employment lawsuits in general gives some insight to these costs. In 2017, one study found that the average "defense and settlement cost" of such lawsuits was $160,000 for insured employers with fewer than 500 employees, and $270,000 for similarly-sized employers "[w]ithout employment practices liability insurance[.]" Hiscox, *The 2017 Hiscox Guide to Employee Lawsuits* (2017),

https://shorturl.at/eYv6y (last visited Jan. 22, 2026).

Litigation costs can be even higher where plaintiffs bring a collective action, which, in 2024, was over 40% of all FLSA lawsuits. Seyfarth Shaw, *2024 FLSA Litigation Metrics & Trends* (2024), https://shorturl.at/f0JAd (last visited Jan. 22, 2026). And courts have recognized that trials of collective actions can inherently disfavor employers, as "the risk is that the weight of the employees' evidence will overwhelm the testimony on behalf of the employer." *Gilstrap*, 734 F. Supp. 3d at 727. That reality influences settlement behavior.

Additionally, because of the FLSA's fee-shifting provision, *see* 29 U.S.C. § 216(b), employers who cannot settle risk additional litigation-related costs, which can—and do—often exceed a plaintiff's damages. *See, e.g.*, *Albers v. Tri-State Implement, Inc.*, 2010 WL 960010, at *26 (D.S.D. Mar. 12, 2010) ($1,637.72 in overtime pay and $46,424.82 in attorneys' fees and costs); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 962 (E.D. Wis. 2003) ($3,539.91 in damages and $36,000 in attorneys' fees); *Gonzalez v. Bustleton Servs.*, 2010 WL 3282623, at *1 (E.D. Pa. Aug. 18, 2010) ($18,495 in damages and $76,066 in attorneys' fees and costs).

Employers must bear these litigation costs regardless of the

strength of a plaintiff's case. As a leading FLSA practitioner testified before Congress, "virtually all" of the hundreds of FLSA lawsuits he has monitored and defended "involve ambiguous or technical requirements," not actual misconduct. *21st Century Hearing* at 24-25. The district court's court-approval rule deprives employers of an efficient, reasonable means to avoid risky, costly, and burdensome litigation by reaching a mutually beneficial settlement with employees early. "Indeed," as one court observed, "it may be in the employer's interest to settle quickly, at least as much as the other way around." *See Gilstrap*, 734 F. Supp. 3d at 727 (emphasis removed).

And for as harmful as it may be to employers, the district court's rule results in no benefit or increased fairness to employees. By "slow[ing] the resolution of FLSA settlements" the court-approval rule "by extension" slows "the payment of wages to plaintiffs," *Walker v. Marathon Petroleum Corp.*, 684 F. Supp. 3d 408, 416 (W.D. Pa. 2023) (quoting *Alcantara v. Duran Landscaping, Inc.*, 2022 WL 2703610, at *1 (E.D. Pa. July 12, 2022)), including cases where plaintiffs "would need to overcome a number of legal hurdles" to recover and thus would have benefited from early settlement and dismissal. *Dino v. Pennsylvania*,

2013 WL 4041681, at *4 (M.D. Pa. Aug. 8, 2013). Just as in the Rule 68 offer of judgment context, "[t]he reviewing court" conducting a fairness review "may thus be required to order the parties to come forward with more information, expending time and resources, and unnecessarily increasing attorney's fees." *Mei Xing Yu*, 944 F.3d at 413.

"[R]arely does this procedural burden" of requiring court approval for FLSA dismissals "yield anything of value to the parties trying to settle." *Alcantara*, 2022 WL 2703610, at *1. For one court, "[t]he point was brought" home when "after the Court had scheduled a fairness hearing upon being advised that the parties had settled (prior to the defendant's appearance in the case), neither side showed up for the hearing." *Picerni v. Bilingual Seit & Preschool Inc.*, 925 F. Supp. 2d 368, 377 (E.D.N.Y. 2013). The court observed that while it "could have unleashed some of the tools that are available to compel compliance with court orders," it "ultimately concluded that there was little point." *Id*. As the court reasoned, "if [it] was not satisfied with the reasonableness of the settlement," then it "would have been faced with an individual plaintiff receiving a relatively small but satisfactory (to him) amount, a plaintiff's attorney satisfied with his proportionately larger fee, and a

defendant which had a business so thin that it could not have an attorney file a notice of appearance or show up at a hearing." *Id.* "Ratcheting up the legal process to achieve some Platonic form of the ideal of judicial vindication did not seem necessary to accomplish any purpose under the FLSA." *Id.* In short, the court-approval rule only imposes additional costs and delay without any clear benefit.

## III. Rule 41(A)(1)(A)(ii) Dismissal Is Mutually Beneficial for Employers and Employees.

By contrast, Rule 41(a)(1)(A)(ii) through its plain text application accomplishes the very goals of efficient and fair resolutions that the court-approval rule purports to achieve, by allowing parties, through mutual agreement, to terminate litigation without judicial intervention.

This is particularly true for wage-and-hour litigation, which inherently entails substantial uncertainty, expense, and delay. "[M]any FLSA actions are simply too small, and the employer's finances too marginal, to have the parties take further action if the Court is not satisfied with the settlement." *Askew v. Inter-Cont'l Hotels Corp.*, 620 F. Supp. 3d 635, 643 (W.D. Ky. 2022) (quotation marks omitted). In contrast to collective actions, "the vast majority" of FLSA cases before one district court involving a single plaintiff, "almost always settle[d] for less than

$20,000 in combined recovery and attorneys' fees, and usually for far less than that; often the employee will settle for between $500 and $2000 dollars in unpaid wages." *Picerni*, 925 F. Supp. 2d at 377. Thus, individual plaintiffs who can reach a mutual beneficial resolution with employers without increasing litigation costs that may threaten even that small payout benefit from voluntary dismissal under Rule 41.

"[P]arties typically settle because it is mutually beneficial to do so." *Gilstrap*, 734 F. Supp. 3d at 728. Early FLSA settlements and dismissals help employers—who faced "5,456 FLSA lawsuits filed across the country" in 2024, Seyfarth, *2024 FLSA Litigation Metrics & Trends* (2024), https://shorturl.at/f0JAd (last visited Jan. 22, 2026)—avoid costly and risky litigation in these cases. Mutual resolution also allows employees to avoid "the risk of the court's legal ruling that the plaintiff is an exempt employee not covered by the FLSA" and ensures recovery for plaintiffs whose claims are weaker because, for example, the employee did "not adequately record her time worked[.]" *Gilstrap*, 734 F. Supp. 3d at 728. It also allows the employee to avoid the risk that the jury will not find the employee credible. *Id.* at 727-28. There are many reasons for employees to also want to settle and dismiss FLSA cases quickly, which

the employees' counsel are better able to assess. "If legal counsel, who owes a duty to the plaintiff alone, cannot secure a mutually beneficial settlement," then "a federal court, armed with less knowledge and owing no duty to the plaintiff," is unlikely to successfully "swoop in and save the plaintiff from a purportedly coercive settlement." *Id.* at 728 n.11.

Accordingly, courts are increasingly rejecting the notion that FLSA settlements require court approval. *See, e.g.*, *Corbett v. Pub. Employees' Ret. Sys.*, 716 F. Supp. 3d 1006, 1010 (D. Nev. 2024); *Evans v. Centurion Managed Care of Arizona LLC*, 686 F. Supp. 3d 880, 884 (D. Ariz. 2023); *Askew*, 620 F. Supp. 3d 635 at 643; *Alcantara*, 2022 WL 2703610, at *1; *Walker*, 2023 WL 4837018, at *3; *Jackson v. Dovenmuehle Mortgage, Inc.*, 2023 WL 4304871, *1 (E.D. Wisc. 2023); *Martinez v. Back Bone Bullies Ltd.*, 2022 WL 782782, *12 (D. Colo. 2022); *see also, e.g.*, *Anderson v. Team Prior, Inc.*, 2022 WL 16531690, *5 n.4 (D. Me. 2022) (criticizing case law requiring court approval for FLSA settlement but approving settlement due to parties' request). In doing so, these courts have highlighted that, where "the parties have been represented by counsel from the outset and have avowed that their settlement arises from various bona fide disputes, a construction that forces employees to pay

heightened litigation fees to tee up a motion for post-settlement judicial approval is not, on balance, in favor of employees." *Evans*, 686 F. Supp. 3d at 886 (quotation marks omitted).

Even in the minority of out-of-Circuit jurisdictions that have applied the district court's rule, courts acknowledge that settlement "is consistent with the FLSA's goals," as it allows "the parties [to] avoid anticipated burdens and expenses in preparing their case and to offset the serious risks of litigation[.]" *Robbins v. Premier Senior Living, LLC*, 2024 WL 4308696, at *3 (N.D.N.Y. Apr. 12, 2024); *see also Boles v. G&S Elec. of Nw. Fla., LLC*, 2023 WL 10554726, at *1 (N.D. Fla. Dec. 28, 2023) ("The parties agree the FLSA settlement benefits all parties, allowing them to avoid further costs of litigation, and that the resolution reached is fair and reasonable."); *Dino*, 2013 WL 4041681, at *4 ("The agreement reasonably compromises disputed issues by compensating Plaintiffs for their FLSA claims and, by agreeing to a settlement at this time, the parties will avoid the costs of a potentially lengthy and complex trial as well as potential appeals.").

\* \* \*

Rule 41 voluntary dismissal facilitates the "just, speedy, and

inexpensive determination of every action and proceeding." Fed. R. Civ. Pro. 1. By contrast, requiring judicial approval for voluntary dismissal of FLSA claims "slows the resolution of FLSA settlements and, by extension, the payment of wages to plaintiffs, forces lawyers to expend more time and resources on the case (and charge higher fees in turn), and clogs court dockets." *Walker*, 684 F. Supp. 3d at 416 (quotation marks omitted). This Court should reject the district court's atextual rule and apply the FLSA and federal rules as written.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's decision and remand these cases to be dismissed without prejudice.

Respectfully submitted,

/s/ *Kasdin M. Mitchell*

| | |
|---|---|
| JESSICA A. LEE | KASDIN M. MITCHELL |
| SHANE D. O'CONNOR | *Counsel of Record* |
| KIRKLAND & ELLIS LLP | CONSTANCE L. MCKINNON |
| 4550 Travis St. | KIRKLAND & ELLIS LLP |
| Dallas, TX 75205 | 1301 Pennsylvania Avenue, N.W. |
| | Washington, D.C. 20004 |
| | Telephone: (214) 972-1770 |
| JENNIFER B. DICKEY | Facsimile: (214) 972-1771 |
| KEVIN R. PALMER | kasdin.mitchell@kirkland.com |
| U.S. CHAMBER LITIGATION CENTER | |
| 1615 H Street, N.W. | |
| Washington, DC 20062 | |

*Counsel for Chamber of Commerce of the United States*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5). This brief contains 3795 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Date: January 29, 2026.              /s/ Kasdin M. Mitchell
                                     KASDIN M. MITCHELL

## CERTIFICATE OF SERVICE

On January 29, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notice of filing to all counsel of record.

/s/ Kasdin M. Mitchell
KASDIN M. MITCHELL